IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

SHANDA AZZI ABNEY, individually and on behalf of all others similarly situated,

CLASS ACTION

*Plaintiff*,

JURY TRIAL DEMANDED

vs.

SHC SERVICES, INC., a Utah Corporation,
d/b/a Supplemental Health Care

*Defendant.*

_____/

## CLASS ACTION COMPLAINT

Plaintiff, Shanda Azzi Abney ("Plaintiff"), files this Class Action Complaint against Defendant, SHC Services, Inc. ("Defendant"), and alleges as follows upon personal knowledge, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. Defendant knowingly and willfully violated of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), by making unsolicited prerecorded telemarketing calls[1] in violation of consumers' privacy rights.

2. Defendant – a corporation that provides healthcare staffing solutions – knew that it was prohibited by the TCPA from contacting consumers on their cellular telephones with prerecorded calls, without their prior express consent.

---

[1] The term "call" is not defined by the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009). "Webster's defines 'call'…as 'to communicate with or try to get into communication with a person by a telephone.'" *Id.* (citing *Webster's Third New International Dictionary* 318 (2002)).

3. Nevertheless, in a failed attempt to circumvent the TCPA, Defendant did just that by utilizing "ringless"[2] voicemail technology to place calls to Plaintiff and members of the Class (defined below) to promote its products and services.

4. Through this action, Plaintiff seeks to hold Defendant accountable for its violations of the TCPA, and for willfully and knowingly violating the privacy of hundreds or thousands of consumers.

5. Plaintiff, for herself and a Class of similarly situated individuals, seeks injunctive relief to halt Defendant's unlawful conduct. Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other legal or equitable remedies to redress Defendant's violations of the TCPA.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, given Defendant's alleged violations of a federal statute. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA") 28 U.S.C. §§ 1332(d)(2) and (d)(6), because there is diversity of citizenship and the claims of individual class members, in the aggregate, exceed the jurisdictional minimum of $5,000,000, exclusive of interest and costs.

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this District thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff and other members of the Class occurred within the State of Florida, thereby subjecting Defendant to jurisdiction in the State of Florida.

---

[2] The term "ringless" was self-servingly coined by companies that peddle this technology, and is simply false. It is common knowledge that every cellular telephone audibly alerts a consumer when a voicemail is received.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a citizen of the State of Florida residing in Palm Beach County, Florida.

9. Defendant is a Utah corporation with its principal place of business located at 1640 West Redstone Center Drive, Suite 200, Park City, UT 84098. Defendant directs, markets, and provides its business activities throughout the State of Florida.

## THE TCPA

9. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)

10. Accordingly, the TCPA exists to prevent communications like the ones made by Defendant that are at issue in this Complaint. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

11. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

12. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

13. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

14. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

15. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

16. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

17. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

18. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

19. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

20. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

21. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTS

### "RINGLESS" VOICEMAILS ARE REGULATED BY THE TCPA

22. "Ringless" voicemail technology was created, and is presently being used by unscrupulous companies, including Defendant, in an attempt to circumvent the TCPA.

23. Unfortunately for Defendant, "ringless" voicemails are regulated by the TCPA and it is liable under the TCPA for invading consumers' privacy rights by utilizing such technology when

engaging in its telemarketing practices.

24. "Ringless" voicemail technology works by delivering prerecorded messages *en masse* to the voicemail boxes of cellular subscribers.

25. However, calls made by utilizing this technology are not actually "ringless" since the prerecorded message that results triggers an audible notification to the consumer once the message is received.

26. Further, the method by which "ringless" voicemails are transmitted to cellular telephones is essentially the same as the method for transmitting text messages to cellular phones. This is significant because consumers are entitled to the same consent-based protections for text messages as they are for voice calls to wireless numbers. *See Satterfield*, 569 F.3d at 952 (noting that the FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (holding that defendant bears the burden of showing that it obtained plaintiff's prior express consent before sending her a text message).

27. As illustrated below, "ringless" voicemails, including the prerecorded messages at issue in this case, are delivered just like text messages by "establishing a direct Internet-based computer-to-computer data connection to the respective voicemails systems of the cellular carries. As part of the protocol for this data communication, subscribers' cellular telephone numbers are used to identify each voicemail box so that the pre-recorded voice messages are inserted into each voicemail box *en masse*."[3]

---

[3] Comments Opposing the Petition for Declaratory Ruling and Waiver by National Consumer Law Center, CG Docket No. 02-278, DA 17-364 (May 18, 2017) available at https://www.fcc.gov/ecfs/filing/105180243621422 (last accessed on December 7, 2017).



28.     Unlike robocalls and text messages, however, consumers are left powerless to block "ringless" voicemails from being transmitted to their phones. Thus, a consumer's voicemail box could be rendered useless by just a handful of companies using the technology to market their businesses.

29.     The purpose of a "ringless" voicemail is to communicate with or try to get into communication with a consumer through the consumer's cellular telephone.

30.     The FCC has previously rejected the argument that technologies such as "ringless" voicemails are not regulated by the TCPA because they are not traditional "calls." Particularly, in the context of Internet-to-phone text messaging, which is essentially the same technology at issue in this case, the FCC has ruled:

> From the recipient's perspective, Internet-to-phone text messaging is functionally equivalent to phone-to-phone text messaging, which the Commission has already confirmed falls within the TCPA's protection. And the potential harm is identical to consumers; unwanted text messages pose the same cost and annoyance to consumers, regardless of whether they originate from a phone or the Internet. Finding otherwise—that merely adding a domain to the telephone number means the number has not been "dialed"—when the effect on the recipient is identical, would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted text messages to wireless consumers.[4]

**FAILED FCC "RINGLESS" VOICEMAIL PETITION**

31.   On January 9, 2017, a putative class action lawsuit under the TCPA was filed against TT of Pine Ridge, Inc., a vehicle dealership located in Naples, Florida, styled *Mahoney v. TT of Pine Ridge, Inc.*, Case No. 9:17-cv-80029-DMM (S.D. Fla. 2017) ("*Mahoney*").

32.   At issue in *Mahoney* was the use of Stratics' voicemail platform by TT of Pine Ridge to promote its dealership's inventory and related services.  [*See id.* at ECF No. 1].

33.   On March 31, 2017, All About the Message, LLC, a distributor for Stratics' ringless voicemail platform, filed a Petition for Declaratory Ruling with the FCC seeking a declaration that the TCPA does not apply to "ringless" voicemails (the "FCC RVM Petition").  The FCC RVM Petition appears to have been initiated and/or coordinated by TT of Pine Ridge as a Motion for Stay pending resolution of the FCC RVM Petition was filed on the same by TT of Pine Ridge in the *Mahoney* lawsuit. [*See id.* at ECF No. 33].

34.   The FCC RVM petition received significant media attention,[5] and fierce opposition by members of Congress, State Attorney Generals, and consumer protection groups, including the National

---

[4] *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015)

[5] *See e.g.* https://www.bostonglobe.com/business/2017/05/24/you-can-sound-off-fcc-about-ringless-voicemail/buOKWDgr06Fxb1m0qk2ZCK/story.html and https://www.nytimes.com/2017/06/03/business/phone-ringless-voicemail-fcc-telemarketer.html.

Consumer Law Center.

35. For example, several members of Congress wrote a letter to the Chairman of the FCC describing "ringless" voicemails as "a clear-cut attempt at an end-run around legal and technological protections against spam and unwanted phone communications."[6]

36. Similarly, the Attorney Generals for Massachusetts, New York, and Kentucky filed an opposition to the FCC RVM Petition stating in pertinent part:

> Ringless voicemails are prerecorded calls within the meaning of the TCPA. All About the Message seeks to avoid this conclusion by stating that ringless voicemail "bypasses the wireless telephone and telephone subscriber altogether," and by narrowly construing its conduct to include only the delivery of the voicemail message to a server and not to the consumer. This is a distinction without a difference.[7]

37. Ultimately, on June 20, 2017, the FCC RVM Petition was withdrawn after a class-wide settlement was reached in *Mahoney*, and the FCC did not issue a ruling with respect to the petition.

38. Upon information and belief, Defendant was aware of the FCC RVM Petition and its withdrawal prior to sending the subject prerecorded telemarketing calls to Plaintiff and members of the Class.

**FACTS SPECIFIC TO PLAINTIFF SHANDA AZZI ABNEY**

39. On or about November 1, 2018, Defendant, transmitted the following prerecorded telemarketing ringless voicemail call to Plaintiff's cellular telephone number ending in 9429 (the "9429 Number"):

> Please press 1 anytime during the following message to be connected back to one of our live recruiters. "Happy fall! This is Andrea, director of schools at Supplement Health Care. Are you thinking about adding some hours to your school schedule? Or maybe you're eager to make a full time shift to working with a new employer. Well come join the SHC

---

[6] *See* Correspondence dated June 21, 2017 available at https://www.fcc.gov/ecfs/filing/1072811351675; (last accessed on December 7, 2017).
[7] Comments Opposing the Petition for Declaratory Ruling and Waiver by Massachusetts, New York, and Kentucky, CG Docket No. 02-278 (June 2, 2017) available at https://www.fcc.gov/ecfs/filing/10602714924246; (last accessed on December 7, 2017).

>team. Enjoy industry leading health benefits, a matching 401k plan, school PTO, and even year round pay if desired. Two of Florida's top ranked districts are in need of both part time and additional full time SLPs to help students learn and thrive. If you or another therapist you know would like to learn more about this school position or other employment opportunities throughout the country call 888-265-1068. That's 888-265-1068." If you wish to unsubscribe from future calls please press 3 now or press 9 to replay this message.

40. The prerecorded telemarketing call was transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

41. Defendant's prerecorded telemarketing call constitutes telemarketing because it encouraged the future purchase, sell, or investment in property, goods, and/or services, i.e., selling Plaintiff healthcare staffing solutions.

42. The prerecorded telemarketing call originated from a telephone number owned and/or operated by or on behalf of Defendant.

43. Plaintiff received the subject prerecorded telemarketing call within this District and, therefore, Defendant's violation of the TCPA occurred within this District. Upon information and belief, Defendant caused other prerecorded telemarketing calls to be sent to individuals residing within this judicial district.

44. At no point in time did Plaintiff provide Defendant with his express consent to be contacted using an ATDS.

45. Plaintiff is the subscriber and sole user of the 9429 Number and is financially responsible for phone service to the 9429 Number.

46. Defendant's unsolicited prerecorded message caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's prerecorded message also inconvenienced Plaintiff and caused disruption to his daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

## CLASS ALLEGATIONS

### PROPOSED CLASS

47. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

48. Plaintiff brings this case on behalf of a Class defined as follows:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a prerecorded message, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, without emergency purpose and without the recipient's prior express written consent.

49. Excluded from the Class is Defendant, its officers, directors, affiliates, legal representatives, employees, successors, subsidiaries and assigns, as well as the judge and court staff to whom this case is assigned. Plaintiff reserves the right to amend the right to amend the Class definition if discovery of further investigation reveals that the Class should be modified.

### NUMEROSITY

50. Upon information and belief, Defendant has transmitted prerecorded telemarketing calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

51. The exact number and identities of the Class members are unknown to Plaintiff at this time, but can be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

52. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant made non-emergency prerecorded telemarketing calls to

Plaintiff's and Class members' cellular telephones;

**(2)** Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

**(3)** Whether Defendant's conduct was knowing and willful;

**(4)** Whether Defendant is liable for damages, and the amount of such damages; and

**(5)** Whether Defendant should be enjoined from such conduct in the future.

53. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits prerecorded telemarketing calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

54. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## ADEQUACY

55. Plaintiff is a representative who will fairly and adequately represent and protect the interests of the Class because he shares common interests with Class members as a result of Defendant's misconduct.

56. In addition, Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including those involving violations of the TCPA. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other respective members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to those of the other members of the Class.

## PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

57. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is

economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

58. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

59. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

60. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

61. Defendant – or third parties directed by Defendant – transmitted calls using an artificial or prerecorded voice to the cellular telephone numbers of Plaintiff and members of the putative class.

62. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior

express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

63. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an artificial or prerecorded voice to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

64. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
(On Behalf of Plaintiff and the Class)

65. Plaintiffs re-allege and incorporate paragraphs 1-58 as if fully set forth herein.

66. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

67. Defendant knew that it did not have prior express consent to transmit artificial or prerecorded voice calls and knew or should have known that its conduct was a violation of the TCPA.

68. Because Defendant knew or should have known that Plaintiffs and Class Members had not given prior express consent to receive its prerecorded calls, the Court should treble the amount of statutory damages available to Plaintiffs and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

69. As a result of Defendant's violations, Plaintiffs and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff, Shanda Azzi Abney, on behalf of himself and the other members of the Class, pray for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

a. An injunction prohibiting Defendant from using an artificial or prerecorded voice to contact telephone numbers assigned to cellular telephones without the prior express permission of the called party;

b. An award of actual and statutory damages; and

c. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and the Class Members hereby demand a trial by jury.

Dated: November 2, 2018

By: */s/Andrew J. Shamis*
Andrew J. Shamis
Florida Bar # 101754
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: efilings@shamisgentile.com

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320